UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JAYSON HALL | ) | 3:17-CV-02109 (KAD) |
| --- | --- | --- |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PETRO HOLDINGS, LLC | ) | |
| *Defendant*. | ) | AUGUST 21, 2019 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge

This employment discrimination action arises out of the termination of plaintiff Jayson Hall ("Hall") from his brief employment with defendant Petro Holdings, LLC ("Petro"). Pending before the Court is Petro's motion for summary judgment. (ECF No. 36.) For the reasons set forth below, Petro's motion for summary judgment is GRANTED.

**Facts[1] and Procedural History**

Petro is a retail distributor of home heating oil. (Def.'s SMF at ¶ 1.) Hall began work for Petro as an oil tank truck driver in November 2014.[2] (*Id.* at ¶ 5.) On February 23, 2015, Hall reported to Petro that he injured himself in a slip-and-fall while delivering oil. (*Id.* at ¶ 6.) Thereafter, Hall was unable to return to work because of his injuries, and he began receiving worker's compensation benefits. (*Id.* at ¶ 7.) Hall was not cleared to return to work for almost a year. (Def.'s Ex. E, ECF No. 39-5.)

---

[1] The relevant facts are taken from the Defendant's Local Rule 56(a)(1) Statement ("Def.'s SMF"); (ECF No. 38); and accompanying exhibits; (ECF Nos. 39); and the Plaintiff's Local Rule 56(a)(2) Statement ("Plf.'s SMF"); (ECF No. 47); and accompanying exhibits; (ECF No. 45).

[2] The parties disagree as to when Hall began his employment with Petro. Petro contends that Hall's employment began on December 1, 2014, while Hall maintains that he began training sometime in November 2014. For purposes of the motion for summary judgment, however, Petro accepted Hall's position that he started his employment in November 2014. The Court need not resolve the issue and, like Petro, construes the evidence in a light most favorable to Hall. Therefore, the Court's analysis assumes Hall started his employment in November 2014.

On February 15, 2016, Hall's treating physician approved him for "a light level of work activity." (*Id.*) On February 16, 2016, Hall returned to Petro and spoke with Jeff Owens, the On Road Delivery Supervisor. (Def.'s SMF at ¶¶ 8, 20.) Hall showed Owen's his doctor's note and asked to return to work.[3] (*Id.* at ¶ 8.) Owens informed Hall that he had already been terminated after a meeting between management and the union. More specifically, Hall testified at his deposition that he and Owens had the following exchange:

> I said to Jeff, I have a light-duty document from the doctor. He says, step outside. . . . He said, you were fired. I said how come I wasn't notified by a phone call, the union, anybody, management, letter? No one contacted me. I still, to this day, I never knew the termination date. . . .

(Def.'s Ex. A ("Hall Depo.") at 88, ECF No. 39-1.)[4] Hall alleges, and Owens denies, that Owens further said that Hall was fired because of his "work ethic" and told him, "look at you; you cannot work." (Hall Depo. at 88.)

Hall initiated this action in Connecticut state court in November 2017. On December 19, 2017, Petro removed this action to federal court. Hall subsequently challenged the removal. On

---

[3] The parties dispute whether Hall asked to return to his position as a tank truck driver or to a light-work position. This dispute is not material.

[4] In an affidavit attached to his opposition memorandum, Hall asserts that Owens fired him on February 16, 2016. (Plf.'s Ex. A ("Hall Aff.") at ¶ 8, ECF No. 45.) However, in one section of the affidavit, Hall asserts that he "was discharged from employment by the Defendant's manager Jeff Owens." (*Id*. at ¶ 8.) In another section, he asserts, consistent with his deposition testimony, that Owens merely "informed me that I was fired." (*Id*. at ¶ 18; *see also* Hall Depo. at 88.) To the extent Hall seeks to rely on the former statement to create an issue of fact, that statement is disregarded. "[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995); *see also In re Fosamax Products Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (holding that a party is prohibited "from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony"). Hall plainly testified at his deposition that Owens merely informed him that he had been terminated, not that Owens himself terminated him. In addition to the testimony quoted above, Hall testified at his deposition:

> No, [Jeff] said you were fired. . . . I said, for what? And he said, your work ethic. He said there was a meeting with the union and management. I said, how come I wasn't notified? How come there wasn't a phone call? A letter? The union rep contacted me, and I'm not aware of this? I said **what was my termination date?**

(Hall Depo. at 92 (emphasis added).) Hall's inquiry regarding his termination date belies any assertion at this juncture that he was terminated by Owens on February 16, 2019.

January 29, 2018, the Court (*Meyer, J.*)[5] remanded Count Two of the Complaint, which asserted a claim for retaliatory discharge under the Workers Compensation Act, Conn. Gen. Stat. § 31-290a, back to state court, but the Court retained jurisdiction over Count One, which asserted multiple claims of discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Connecticut Fair Employment Practices Act, Conn. Gen. St. § 46a-60(a) ("CFEPA"), and the Rehabilitation Act of 1973, 28 U.S.C. § 791, *et seq.* ("Rehabilitation Act"). (ECF No. 17.) On March 2, 2018, Hall filed the Amended Complaint, which removed Count Two. On February 15, 2019, Petro filed the instant motion for summary judgment. Neither party requested oral argument on the motion. Additional facts will be included as necessary.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing of a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support

---

[5] This matter was transferred to the undersigned on September 20, 2018.

the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party must set forth "'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Id.*; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

Petro contends that it is entitled to judgment as a matter of law on Hall's claims under the ADA and CFEPA.[6] In his complaint, Hall alleges that Petro violated the ADA and CFEPA by terminating him based on his actual or perceived disability and by failing to provide him with a reasonable accommodation for his physical disability.

ADA and CFEPA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Clark v. Stop & Shop Supermarket Co.*, No. 3:15-cv-00304 (JCH), 2016 WL 4408983, at *3 (D. Conn. Aug. 16, 2016); *see Feliciano v. Autozone. Inc.*, 316 Conn. 65, 73 (2015) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). "The burden of proof that must be met to permit an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (alterations omitted; internal quotation marks omitted). "Once a plaintiff meets this initial burden,

---

[6] Petro has also moved for summary judgment as to any claims made under the Rehabilitation Act on the grounds that it does not receive any federal funding, as required by the statute. *See Dean v. Univ. at Buffalo Sch. Of Med. & Biomedical Scis.*, 804 F.3d 178, 186 (2d Cir. 2015) ("By its terms, the Rehabilitation Act . . . applies only to programs receiving federal financial support.") Hall does not respond to this argument or this factual assertion. The motion for summary judgment as to any claims made under the Rehabilitation Act is granted and is not further discussed herein.

Similarly, Petro asserts that it is entitled to judgment as a matter of law on Hall's retaliation claims under the ADA and CFEPA because there is no evidence that Hall engaged in any "protected activity" which might be a basis for retaliation. *See Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002) (stating that a prime facie case of retaliation is made where (1) the plaintiff engaged in activity protected by the ADA; (2) the employer was aware of the protected activity; (3) the employer took an adverse employment action against the plaintiff and (4) there was a causal connection between the activity and the adverse employment action). Hall does not respond to this argument or factual assertion. Accordingly, the claim is deemed abandoned and summary judgment on the retaliation claim is granted and is not further discussed herein. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("While the opponent to . . . a motion [for summary judgment] is free to ignore it completely, thereby risking the admission of key facts and leaving it to the court to determine the legal merits of all claims or defenses on those admitted facts, a partial opposition may imply an abandonment of some claims or defenses."); *Doe ex rel. Doe v. Darien Bd. Of Educ.,* 110 F. Supp. 3d 386, 415 n.21 (D. Conn. 2015) (noting that the court may deem claims not addressed in opposition to summary judgment abandoned by the non-moving party).

the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination." *Ruiz*, 609 F.3d at 492. If the defendant offers a legitimate non-discriminatory reason for the termination, "the burden returns to the plaintiff to show that the real reason for plaintiff's termination was" unlawful discrimination. *Id.*

"To establish a prima facie case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.,* 198 F.3d 68, 72 (2d Cir. 1999) (citing *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir.1998)).

Additional facts are needed to address Hall's claims under the ADA and CFEPA. Petro's oil tank truck drivers belong to a labor union and their employment is governed by a collective bargaining agreement (the "CBA"). (Def.'s Ex. C ("CBA"), ECF No. 39-3.) The CBA distinguishes between new employees (those on the job for 90 days or less) and employees on the seniority list (those on the job for greater than 90 days). Employees on the seniority list have greater rights with respect to termination than new employees.

Specifically, with respect to new employees, the CBA provides in relevant part:

> Any man newly employed shall be so employed only on a ninety (90) day trial basis during which time he shall either be dismissed without further recourse, or placed on the seniority list.

(*Id.* at Art. 11(B)(3).) With respect to employees on the seniority list, the CBA provides in relevant part:

> In the event an employee is unable to perform his customary work due to occupational injury, his employment shall be considered

6

> terminated if the absence continues for the following specified periods:
>
> Employees with less than 3 years of service — 1 year *or length of service, whichever is less*. . . .

(*Id.* at Art. 11(B)(6)(p) (emphasis added).)

As noted above, the Court's analysis assumes that Hall had obtained seniority list status at the time of his injury on February 23, 2015. By operation of the CBA, his employment was "considered terminated" when his absence surpassed his length of service, in approximately June of 2015. Accordingly, Hall cannot establish that he was terminated "because of" his disability, actual or perceived, because he was terminated by operation of the CBA. In short, Hall was no longer a Petro employee when he attempted to return to work in February of 2016, seeking a light duty accommodation. Notably, Hall does not challenge the provisions of the CBA or Petro's analysis as to the operation of those provisions. Hall only asserts that Article 11(B)(6)(p) of the CBA cannot be applied to him because Petro has consistently taken the position, as a factual matter, that Hall started work on December 1, 2014 and had therefore not obtained seniority list status. This argument is unavailing. If Hall was not on the seniority list because he had not completed ninety days of work prior to his injury, he would have had fewer rights under the CBA. Indeed, under Article 11(B)(3), he would have been automatically terminated at the end of his ninety-day trial period without further recourse — *i.e.*, on February 29, 2015 — almost a year before he attempted to return to work at Petro. (CBA, Art. 11(B)(3).)

Nothing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies, including the terms of its collective bargaining agreement. Here, the CBA, which was binding upon both Petro and Hall, provided for his automatic termination under either parties' theory of how long he had been employed. Accordingly, Hall cannot make out a *prima facie* case that his termination was the result of improper disability discrimination. *See Cioce v.*

*Cty. of Westchester*, 128 Fed. Appx. 181, 184 (2d Cir. 2005) (summary order) (holding that ADA claims were properly dismissed for failure to state a claim where plaintiff "was terminated because of his failure to submit to independent medical examinations as required by the CBA, and not because of his disability"); *Gera v. Cty. of Schuylkill*, 617 Fed. Appx. 144, 147 (3d Cir. 2015) (summary order) (rejecting ADA retaliation claim where plaintiff "did not dispute the defendant's contention that it ultimately laid him off due to a staff shortage, in accordance with the collective bargaining agreement"); *Watson v. Paulson*, 578 F. Supp. 2d 554, 566 (S.D.N.Y. 2008) (rejecting Title VII retaliation claim where "Defendant has put forth ample evidence demonstrating that the reassignment was conducted consistent with the applicable collective bargaining agreements following the reorganization of the IRS"), *aff'd sub nom. Watson v. Geithner*, 355 Fed. Appx. 482 (2d Cir. 2009) (summary order); *see E.E.O.C. v. United Airlines, Inc.*, 693 F.3d 760, 765 (7th Cir. 2012) (agreeing that "the ADA requires employers to appoint disabled employees to vacant positions, provided that such accommodations would not . . . run afoul of a collective bargaining agreement"); *Morris v. Town of Islip*, No. 12-cv-02984 (JFB) (SIL), 2014 WL 4700227, at *15 (E.D.N.Y. Sept. 22, 2014) (holding that enforcement of a provision in the collective bargaining agreement between a town and its workforce cannot support a claim of discrimination based on disability); *see also Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1175 (10th Cir. 1999) (discussing application of ADA where collective bargaining agreement exists).

For the same reason, to the extent separate analysis is required, the ADA claim premised on a failure to accommodate theory must also fail. "Failure to make a reasonable accommodation can also constitute discrimination 'because of' a disability under the ADA." *Sutherland v. New York State Dep't of Law,* 216 F.3d 1073, at *2 (2d Cir. 2000) (summary order). Hall asserts that Petro should have accommodated his light duty request in February 2016 and should have

informed him about its Transitional Work Program ("TWP"), which helps injured employees transition back to full duty. (*See* Def.'s Ex. D at 5–6, 8, ECF No. No. 39-4 (TWP Policy and Procedure Manual).) But it is undisputed that Hall was physically unable to perform his job between the date of injury in February 2015 and February 2016. Accordingly, prior to his termination in June 2015, Hall would not have been eligible for TWP. Nor does Hall claim that he sought an accommodation prior to June 2015. "An employer cannot refuse to make an accommodation that it was never asked to make." *Palmer v. Liberty Mut. Grp. Inc.*, No. 3:14-cv-00953 (WWE), 2016 WL 4203375, at *6 (D. Conn. Aug. 9, 2016). In sum, the duty to accommodate an employee's disability presupposes an employer-employee relationship. By February 2016, no such relationship existed.

Nevertheless, Hall contends that his exchange with Owens on February 16, 2016, during which Owens allegedly made negative comments about his work ethic and ability to work, raise a genuine issue of material fact as to Petro's discriminatory intent and whether Petro's reliance on the CBA is pretextual. The Court disagrees. There is no genuine dispute that Owens played no role in Hall's termination; *see* footnote 4 of this opinion; and did not have the supervisory authority to terminate Hall's employment in any event. Indeed, Hall testified at his deposition that Owens was merely the person that informed him that he had been fired after a meeting between the union and management. (Hall Depo. at 88, 92.) "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 545 (3d Cir. 1992); *accord Campbell v. All. Nat. Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000); *see also Stephan v. W. Irondequoit Cent. Sch. Dist.*, 450 Fed. Appx. 77, 80 (2d Cir. 2011) (summary order) (citation omitted) (supervisor referring to employee with

derogatory names such as "retard," "Special Edna," and "Crystal Meth" insufficient for disability discrimination because supervisor lacked ultimate authority over plaintiff's hiring and firing). Here, no reasonable juror could conclude based on Owens' statements to Hall in February of 2016 that Hall's termination under the CBA some seven months earlier was the product of disability discrimination.[7]

In sum, Hall cannot make out a *prima facie* case of disability discrimination. Accordingly, Petro is entitled to judgment as a matter of law as to Hall's claims under the ADA and CFEPA.

**Conclusion**

For the reasons set forth in this decision, Petro's motion for summary judgment [ECF No. 36] is GRANTED. The Clerk of Court is directed to render judgment in favor of Petro and close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of August 2019.

                                                                      */s/ Kari A. Dooley*
                                                                      KARI A. DOOLEY
                                                                      UNITED STATES DISTRICT JUDGE

---

[7] The Court also notes that a comment about Hall's "work ethic" does not implicate actual or perceived disability and does not contribute to an inference of discriminatory intent, and the statement "look at you, you can't work" was factually consistent with the doctor's note permitting only light work subject to significant restrictions. Such innocuous commentary, from an individual who had no role in the termination, cannot defeat summary judgment.